# Hoadley et al. v. John Purifoy, as Auditor.

*Petition for Mandamus to Compel Issue of License for Insurance Business.*

1. *State has authority to regulate business of fire insurance within the state* —The state has the right to adopt all needful rules and regulations, which are reasonable, to regulate the business of fire insurance in this state.

2. *Code, 1886, § 1200, applies only to foreign corporations.*—Code, 1886, § 1200, regulating the business of fire and marine insurance, with its sub-divisions, as taken from the Act of March 8, 1875, (Acts

[Hoadley *et al.* v. John Purifoy, as Auditor.]

1874-5. p. 112), was enacted to regulate the business of foreign corporations doing business in this state.—(*Noble v. Mitchell*, 100 Ala. 519, followed.)

3. *Act Feb. 28, 1887, (Acts 1886-7, p. 85) applies only to chartered companies.*—Act of Feb. 28, 1887. (Acts 1886-87, p. 85), providing "that all insurance companies doing business as such in the State of Alabama, whether chartered by the state or admitted from other states," shall have an actual, paid-up capital of not less than $100,000, and providing "that all insurance companies doing business in the state, both foreign and domestic, shall be required to make an annual sworn statement to the auditor of their assets," applies only to chartered companies, and not to an unincorporated association.

4. *Act Feb. 28, 1887, (Acts 1886-87, p. 105), applies only to foreign insurance corporations.*—Act Feb. 28, 1887, (Acts 1886-87, p. 105), entitled "An act to require all insurance companies not organized under the laws of this state to pay a uniform license tax * * * for the privilege of doing business in this state," applies only to foreign incorporated insurance companies, and mandamus does not lie to compel the issuance of such license to a foreign unincorporated insurance association.

5. *Incorporation not a prerequisite to engaging in fire insurance business in this state.*—There is no statute law in this state, nor principle of public policy which prohibits the citizens of this state, acting as individuals, associations, partnerships or companies from engaging in the business of fire insurance without first being incorporated, and under the constitution of the United States, the citizens of each of the United States are entitled to "like privileges and immunities."

6. *Citizens of other states, not incorporated, not required to have license to engage in fire insurance business in this state.*—Citizens of other states, not incorporated, are entitled to engage in the fire insurance business in this state, without license for that purpose, and the auditor has no authority to issue such license.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOMAS M. ARRINGTON.

The appellants are all citizens of New York, doing the business of underwriters under the style of the South & North American Lloyds of the city of New York. On the 14th day of January, 1895, and again about the 10th day of March, 1895, they applied to the Hon. John Purifoy, auditor of the State of Alabama, for a license to transact the business of fire, inland and marine insurance in this State. On each occasion they tendered him the sum of $100, and all lawful fees, and filed with him at the same time a written instrument as required by section 1201 of the Code, appointing an

agent for the service of process, and also two sworn statements, showing their assets, condition, etc. The appellants not being a corporation, did not file any "certified copy of the charter," but they did file a statement, Exhibit A, showing how the petitioners were organized or constituted. These several statements were verified by an agent or attorney, petitioners (not being a corporation) having no president, etc., their statements did not disclose any "capital stock," "president," etc. As appellants' property is all in cash, the statements do not show the "location and value of real estate, or amounts secured by bonds and mortgages," nor "bonds of this State nor of the United States," etc. This sworn statement, however, shows cash, deposited with the bank of North America, $91,616.40, and gross premiums in process of collection, $58,474.72, making an aggregate amount of all the assets of the company, stated at their actual value, of $160,091.12. The same statement shows liabilities, $31,625—or a cash capital of $128,466, after paying all outstanding claims—"the absolute property of the underwriters free and clear of any liens or claims thereon." These statements show that the receipts of appellants for the past year were $439,064, and the total expenses and disbursements for the same period, $271,576.01.

The statement which was marked Exhibit A to the petition, showing how the petitioners were organized and constituted, was as follows: "The South and North American Lloyds of the city of New York. Whipple and Company, attorneys. Know all men by these presents, That we, the undersigned, each for himself, and not one for the other, have made, constituted and appointed, and do by these presents, make, constitute and appoint Joseph L. Parraga and David F. Casey of the city of New York, composing the firm of Whipple & Co., or either of them, our true and lawful attorneys, for us and in our names, place and stead, to insure any and every description of property and buildings, and any interest therein, wherever situated, and on hulls, cargoes and freights, against loss and damage by fire and marine, upon such terms, and at such rates of premium as shall be fixed by our said attorneys, and for this purpurpose to receive applications for insurance or re-insurance, and to make the same binding upon us, and to

[Hoadley *et al.* v. John Purifoy, as Auditor.]

make and issue to any person or persons, firm or firms, corporation or corporations, the proper policy or policies of re-insurance containing all such terms, clauses and conditions, warranties and agreements, as our said attorneys shall deem meet; and to subscribe such policies with our names, and the amount insured by us thereon.

"The policies so issued, shall be called the policies of The South and North Lloyds of the city of New York, and shall be issued in the said city.

"The said attorneys have power to change or modify the terms of any such policies issued by them, and to annul and cancel the same; and also at any time, in their discretion, to reinsure any and all risks, so taken and insured by us, and in such manner and form, and with such companies or underwriters, as shall be deemed by them most advantageous.

"All policies so issued, upon any one risk for each of us respectively by the said attorneys, shall be for an amount not exceeding the sum of one thousand dollars upon any one risk at any one time.

"The said attorneys have power to retain in their hands all premiums received by them for each of us respectively subject to the control of the finance committee. This power of attorney can only be cancelled on the expiration of three years from the date of the first policy issued, unless by the mutual consent of the principal and the said attorneys.

"The said attorneys have power to adjust and pay out of any moneys or things of value in their hands, belonging to us, any loss or average that may happen under any policy so to be issued by us, and any claim or demand whatsoever, which shall arise or accrue to any person or party, by, from or under any policy or agreement which shall be entered into by our said attorneys, in our name or on our account, in pursuance hereof, and upon such terms and in such manner as they shall deem best, to compound, compromise and settle any and every such loss, average, claim and demand whatsoever. And in case of suit being brought, or any proceedings at law or in equity being taken upon any such policy or agreement against us, to appear for us and in our names, to defend the same, and to compromise, adjust and settle any and all such suits and proceedings And in the event of any such suit or pro-

ceedings being brought or commenced against any other of the persons for whom they so act as attorneys, upon any policy or agreement which shall have been likewise subscribed or entered into by us in virtue hereof, to make and enter into such admissions agreements or arrangements with respect to our liabilities thereon, with the parties bringing such suit or proceedings as shall in their judgment be expedient, with a view to preventing a multiplicity of suits and costs.

"And, also, to commence and prosecute any and all such proceedings at law and in equity, as may, within the judgment of our said attorneys, be necessary and proper for the purpose of collecting and realizing any and all sums of money which may become due to us for premiums or otherwise, on account of any insurance, agreement or policy made or entered into by us, by virtue hereof, or for the protection, establishment or enforcement of any and all our rights in the premises, and in their discretion, to compound, compromise, settle, withdraw and discontinue the same.

"And also, to do and perform for us and in our names, every other act and thing in relation to any insurance or policy, made by them by virtue hereof, hereby giving and granting unto our said attorneys full power and authority to do all and every needful and proper act and thing, and in and about the premises above specified, which we could do personally, and ratifying all that they may lawfully do or cause to be done by virtue hereof.

"Provided, always, and the power and authority hereby given and granted to our said attorneys are upon this express condition, that in no event or contingency shall the liability of any underwriter exceed the amount of the subscription by such underwriter on any one risk, and in no event or contingency shall any underwriter be liable for any part of the sum subscribed by any other underwriter, or which shall make us liable or affect us any otherwise than by a several and individual liability, or the amount insured or subscribed by us or in our names.

"The cost of office, rent, printing, stationary and other incidental expenses, postages and commissions, shall be covered and paid by the said attorneys, they receiving in payment in lieu thereof 25 per cent commis-

[Hoadley *et al.* v. John Purifoy, as Auditor.]

sions on the amount of premiums received, the costs and expenses of litigation excepted.

"And, in consideration of the premises, we do hereby covenant and agree, to and with the said attorneys, and each of them, and to and with each and every person and party to whom any policy of insurance shall be issued, in our name, by virtue of this power, or with whom any other agreement shall be made and entered into by our said attorneys in our name, by virtue of the power and authority hereby granted, that we will, in all things, fully and faithfully carry out, execute and fulfill the same, and do and perform everything to which our said attorneys shall, by virtue hereof, bind us ; and pay, or cause to be paid over to them, the said attorneys, on demand, any sum or sums of money that may be due by each of us respectively upon claims for losses incurred, at any time, over and above the provisions made herein having this day, each of us, for himself only, deposited into the hands of said attorneys, subject to the control of the Finance Committee, the sum of five hundred dollars as a guaranty fund.

"Provided, also, that if by reason of a fire, several risks insured under policies issued pursuant to the power and authority hereby given and granted to our attorneys, are involved in such fire, no one of the underwriters shall upon such policies collectively become liable for more than five times the maximum amount, which under the said power of attorney the said Whipple & Co. shall be authorized to subscribe for each of said underwriters on any one policy.

"In witness whereof, we have hereunto set our names at the city of New York, this ——— day of——— in the year one thousand, eight hundred and ninety." Then follows the signatures of the several appellants.

The Auditor refused the money tendered, and declined to issue the license, "assigning as the sole and only reason for his refusal that the petitioners did not and had not filed with him the statements required by Section 1200 of the Code." The appellants thereupon filed their petition in the city court disclosing substantially the foregoing facts, and prayed for a *mandamus* to compel the Auditor to certify the money tendered to the treasurer, and to issue to them a license to do the business of fire insurance, &c.

[Hoadley *et al.* v. John Purifoy, as Auditor.]

The Auditor demurred to the petition on the following grounds : 1st. Because the petitioners fail to allege that they have filed with the Auditor a certified copy of the charter or deed of settlement of the Insurance Company which seeks to obtain from the Auditor permission to transact business in the State of Alabama, but on the contrary admit and aver that the Association in behalf of which the application is made, is an unincorporated concern without any charter or deed of settlement.

"2d. Because the petitioners fail to allege that they have filed with the Auditor a statement exhibiting the following facts and items in relation to the business condition on the 31st day of December, 1894, of the concern for which they are seeking to obtain permission to transact business in the State of Alabama, viz., they fail to allege the amount of the capital stock of the company and how much of the same has been paid up in cash.

"3d. Because the petitioners fail to show that they have filed with the State Auditor a statement as required by Section 1200 of the Code of 1886, subscribed under oath by the President and Secretary, or other chief officers or managers of the South & North American Lloyds, but on the contrary, disclose that the said South & North American Lloyds have no president, secretary, or other chief officers, or managers.

"4th. Because the facts averred in the petition disclose that the concern in behalf of which the petitioners are moving is not such an Insurance Company as the Auditor is authorized and empowered to license under the laws of Alabama.

"5th. Because the facts averred in the petition fail to disclose that the South & North American Lloyds is such an Insurance Company as the State Auditor is authorized and empowered to license under the laws of the State of Alabama."

This demurrer was sustained, and the petitioners declining to amend or plead further, the application was denied, and the petition dismissed. The present appeal is prosecuted by the petitioners, who assign as error the sustaining of the demurrer to the petition filed by them, and the judgment by the court dismissing the petition.

THOS. G. and CHARLES P. JONES for the appellant. But for the act approved February 28, 1887 (Acts of

1886-87, p. 85, which may also be found at the bottom of page 312 of the Code), and Section 1207 of the Code, there would not be much difficulty in reaching the conclusion that our statutes were intended to apply solely to foreign *corporations*, and do not apply in any degree whatever to unorganized bodies, firms or part-- nerships, whether composed of citizens of this or other states.

Section 1207 declares that the "term insurance company as used in this article, includes every company, corporation, association or partnership organized for the purpose of transacting the business of insurance." Leaving section 1207 of the Code, and the act of February 28, 1887, out of view for the present, there are only three sections of the chapter devoted to "fire, inland and marine insurance companies not incorporated by this State," which aid us in construing § 1199, or give any clew to the kind of "insurance companies" which the law makers intend to subject to the payment of license and the other conditions imposed therefor. The statements required by section 1200 are as to twenty-six different matters. The companies which are required to answer on these points are clearly described in the beginning of the section, which declares "on the day on which it shall apply to transact business, such company shall also file with the auditor a certified copy of the *charter* or deed of settlement of the company, and a statement exhibiting the following facts and items, etc:" It is only companies having a "charter or deed of settlement" which are required to make the statement provided by section 1200. The terms "charter, capital stock, etc., in this connection are applicable only to artificial persons, given corporate existence by special legislative act, or in pursuance of general statutes. Section 1201 evidently refers to *corporations*—the service of process on them upon the same footing with "domestic corporations," Section 1202 by its express terms, refers to companies incorporated by foreign governments and to no others. Section 1203 refers to corporations—it speaks of the assets being reduced more than "25% below the capital stock," etc. So far the provisions of this article are applicable only to corporations—companies having charters, capital stock, etc.—and if the statute stopped here

there would be no difficulty in holding that the article had no reference whatever to the business sought to be carried on by the petitioners, who are citizens of New York. The Supreme Court of Georgia so held under a statute somewhat similar to ours.—*Fort v. State of Georgia*, 92 Ga. Rep., page 8; see also *Commonwealth v. Reinochl*, 163 Pa. St. Rep., 287.

If we insert section 1207 in section 1199 immediately in place of the words "insurance company," it would read as follows:

"Before any insurance company, corporation, association or partnership organized for the purpose of transacting the business of insurance, and not organized or incorporated by the laws of this State, shall transact any business of insurance, etc., it shall pay into the treasury, etc." This would make the law unconstitutional as to partnerships and associations not incorporated; for it would exclude from its provisions domestic corporations, associations, companies and partnerships composed of citizens of Alabama, and yet subject like associations and partnerships composed of citizens of other states, to the burdens from which Alabama citizens are freed under the same conditions.—*Noble v. Mitchell*, 100 Ala., p. 531; *State v. Claiborne*, 1 Meigs, 347; Constitution of United States, Art. IV, § 2; *Ward v. Maryland*, 12 Wall, 418. Section 1207 uses the terms corporation, company, association or partnership. Every one of these terms must have some office, and neither of them was intended to be the equivalent of the other. When the word "corporation" is used, and immediately following the words "company, association or partnership," it is quite evident that the law makers did not intend to use the latter terms as synonymous with "corporations." It is an inapt expression to speak of partnerships not organized under, or incorporated by the laws of this State. It is to be presumed that the legislature of Alabama knew that while it might exclude foreign corporations from doing a fire insurance business here, that they had no such power as to mere partnerships or companies composed of citizens of other states. The intent, therefore, to effect such a result, cannot be imputed to the legislature, if the definition of insurance company in section 1207 can be so applied to the other provisions of the chapter as to avoid that re-

sult.  If the words "not organized under or incorporated by the laws of this State," which precede the words "insurance company" in section 1199 may be treated as descriptive merely of the insurance company only when it is a foreign corporation, the words "association or partnership organized for the purpose of transacting the business of insurance," might be held to include all such associations or partnerships whether composed of citizens of Alabama, or of other states. This would prevent any objection to the law as being discriminative against citizens of other states.  But in escaping that dilemma, we would run counter to the objection that under such a construction a domestic corporation of Alabama would be exempt from burdens put under precisely the same conditions upon citizens of other states, and so to escape declaring the law unconstitutional in one particular, we render it vicious in the other particular.—*Ward v. Maryland*, 12 Wallace, 418.

The Act of February 28, 1887, adds to the difficulty of arriving at a satisfactory construction.  It forbids all insurance companies doing business here, "whether chartered by the State, or admitted from other States, from doing business, unless it has an actual cash capital fully paid up in cash of not less than $100,000, &c."  It also provides that *all insurance companies doing business in this State*, whether chartered by the State or admitted from other States," shall have a prescribed capital, and it also requires all insurance companies doing business in this State, both foreign and domestic to make annual sworn statements to the Auditor, of their assets, condition, business of the previous year in premiums, losses and expenses in the State, and repeals "all laws in conflict with this provision."  This Act includes all insurance companies whether chartered or not.  To come within its provisions all that is requisite is that the company must be an insurance company, and do business within this State.  In sweeping terms it requires all insurance companies doing business here, whether foreign or domestic, to make annual statements, &c.  This law must be construed in connection with the provisions of the Code on this subject.  Both the Code and the statute must be given some effect and be so construed as to have some effect and operation as far as pos-

sible. Every insurance company is brought under the duty of making sworn statements, and having a prescribed capital. There is nothing in the Act of Feb. 28 1887, which conflicts with section 1203 of the Code which makes it the duty of the Auditor when the "assets of any company" are reduced, to revoke their authority to do business in this State, so that provision would still be in play; and the only way the Auditor can give them authority is by license. The fair construction of the Code and subsequent statutes is, that they are to be applied as far as the nature of the different organizations will permit, to all partnerships or associations as well as corporations engaged in fire insurance business in this State. They ought not to be construed on the one hand to intend the unconstitutional purpose of excluding associations and partnerships from engaging in the business; nor on the other hand to exempt them from the burdens which are imposed upon other organizations engaged in like business. Such a construction, of statutes somewhat similar to ours, was adopted by the Supreme Court of Missouri in *Stone v. The State*, 118 Mo., p. 388 where it was held that there was nothing in the laws of Missouri which prevented the defendant there from having a valid certificate issued to him by the Insurance Commissioner. The defendant in that case represented 100 persons in New York who were conducting insurance in the manner of the "Ancient Lloyds," and the evidence shows that the association was organized in the same manner as the petitioners in the present case. Such a construction must be put upon our statutes as either frees the Lloyds from all license and restrictions, or else they must be construed to allow partnerships and associations, which are not incorporated, to do business in this State in substantial compliance, with the provisions of our laws, relative to corporations so far as they are applicable to them.—*Joseph v. Randolph*, 71 Ala. 506. Petitioners fully complied with the law when they tendered the license fee and designated A. J. Lamar their agent for the service of process, &c., in the manner required by the statute; and if they were required to file any further papers the statements filed by them contained all that the statute can be construed to require of them.

The legislature, as the creator, of corporations, may

require such amount of capital as it pleases as a condition of its grant of corporate power, but it cannot make such an exaction of individuals or unincorporated companies as the condition on which the State will permit them to do insurance business. If the Alabama statutes are held to apply only to corporations, and forbid the license of individuals, and make it unlawful for them to do business without license, it is unconstitutional, and hence no such construction can be put upon them.

The business is not affected with a public use, and cannot be regulated so as to prevent the citizen from engaging in it as well as the corporation. Persons engaged in the business of making contracts of indemnity against losses by fire, can not be excluded from it because they have no charter, or cannot do acts or file statements which are applicable to or can be performed only by corporations. If our statutes, cannot have this construction they effect an unwarranted invasion of the liberty and rights of a citizen, and inaugurate a system of tutilage over the conduct of citizens *sui-juris* offensive to constitutional limitations, and are therefore avoid. —See *State v. Loomis*, 115 Mo. 307; *Godcharles v. Welgeman*, 113 Pa. St,; *State v. Goodwill*, 38 W. Va. 139; *State v. Coke Co.* 33 W. Va. 188; Re Kuback 85 Cal. 274; *Millette v. People*, 117 Ill. 294; *Forer v. People*, 141 Ill. 171. Each of these cases affords striking illustrations of the limits of legislative power over the right of persons *sui juris* to make contracts.

We have been unable to find but one case in America which goes to the extent of holding that it is competent for the legislature of a State to declare that only corporations shall transact insurance business, and that is *Commonwealth v. Vrooman*, 25 Lawyers' Reports, Annotated, 252–257, which was pronounced by a bare majority, the cheif and two justices dissenting, and is *indefensible on principle and authority*, See Tenn. *Ins. Co. State*, 86 Texas 250—a leading authority on this point.

The doctrine of the majority opinion on Vrooman's case, *supra*, whatever support it may find in peculiar provisions of the constitution of that State, is utterly hostile to the positive commands of our organic law. That doctrine and section 37 of our Declaration of Rights can not live in the same atmosphere. Our Supreme Law declares, "that the sole object and only legitimate

[Hoadley et al. v. John Purifoy, as Auditor.]

end of government is to protect the citizen in the enjoyment of life, liberty and property: and when the government assumes other functions, it is usurpation and oppression.'' The same thought is embodied is §§ 1, 2, 7 of the Declaration of Rights. The Pennsylvania doctrine is at war with all of our decisions. *Ex parte Dorsey*, 7 Porter, 293; *Morris v. Railroad*, 65 Ala. 193; *Joseph v. Randolph*, 71 Ala. 499  A man engaged in the fire insurance business·can not be singled out and made to enter into a corporation, as a condition precedent to doing business, when all other like private business, may be carried on by individuals. Such legislation is vicious class legislation, forbiden alike, by State and Federal Constitutions.—*Smith v. L. & N. R. R. Co.*, 75 Ala. 451.

The man engaged in insurance has the right to be freed from the exaction of surrendering his individuality, and being forced to take a partner, where no such requirements are made of individuals in other private business and under the same conditions. His equality of rights and privileges in that respect is thereby destroyed. See Cooley Con. Lim §§ 392, 393; Locke on Civil Government § 142; *Walley v. Kennedy*, 2 Yerger 554; *Morris v. Railroad*, 65 Ala. 193; *Smith v. L. N. R. R.* 75 Ala. 451; Black on Constitutional Prohibitions § 64; Tiedman's Limitation of Police Powers § 102; *Birmingham v. Street Ry*, 79 Ala. 475.

Wm. C. Fitts, Attorney-General, for the State.—Section 2 of the petition admits that the Association to which the petitioners claim to belong, has never been chartered under the laws of the State of New York or any other State. Section 4 of the petition discloses the fact that the concern is unincorporated in any manner; that it has neither a Vice-President, president, or other official.

The true rule is contained in the majority opinion in the case of *Com. of Penn. v. Vrooman*, 25 Law's Rep. annotated 250.

This is known as the pioneer case upon the subject of "Lloyds and the ground therein taken by the majority of the Court is thoroughly sound. For further discussion of the same system of insurance See *Com. of Penn. v. Reinochl*, 25 Law Rep. Annotated 247. For a further

and varied analysis of this subject see the Alabama case of *Noble & Ware v. Mitchell*, and the copious notes thereto as reported in the 25 Vol. Law. Repts. Annotated pp. 238 and 239. For a good demonstration of the actual practical working of this mode of insurance see and note well the Missouri case of *State of Missouri v. Stone*, 25 Law. Rep. Annotated, 243.

COLEMAN, J.—The appellants applied to the auditor for license to engage in the fire insurance business within the State of Alabama. License having been refused by the auditor, they petitioned the city court for mandamus, to compel the issuance of the license. The court sustained the demurrer to the petition and from this ruling, appellants appeal to this court. The petition and grounds of demurrer require a consideration of the character in which appellants propose to do an insurance business, as well as the meaning and extent of the statutes of this state, regulating the insurance business within its limits. According to the showing made by the petition, the business was to be carried on in the manner of the ancient Lloyds. The respective liabilities and limitations of liability of the individual members to each other, and the rights, interests and privileges defined and preserved to each other and the limitation upon their respective liability fixed and declared in the policies of insurance, to be issued, in accordance with the instrument of organization as shown by exhibit A to the petition, which exhibit is in the statement of facts by the reporter, are such, that the business of insurance thus carried on may be included within the scope of the term "company," "association," or individuals." Each underwriter is individually liable for a fixed amount, but not for the whole, or for any part of another underwriters liability, yet all act together to effect the contract of insurance. In the former respect it is an individual undertaking which becomes binding by the separate action of all. In the latter respect, the policy is also the contract of a "company" or "association." It is not a partnership in a legal sense, and in no sense can it be considered a corporation. It is an association or company of individuals, organized to do an insurance business upon certain stipulations and conditions evidenced by their written agreement. It is generally con-

ceded, and in this conclusion we concur, that each state has ample power to regulate the business of insurance within its boundary. Whether a state has the authority under the power to regulate, to exclude all individuals, companies, partnerships, organizations and associations of persons from engaging in the business of fire insurance, and permit or empower corporations to monopolize the business, we need not consider. We have no statute which requires the consideration of this question. It seems there is a statute of this kind in Pennsylvania.—*Commonwealth v. Vrooman*, 25 L. R. A., 250.

The petitioners are non-residents of Alabama, and are citizens of the state of New York, and the question we feel bound to determine, under the constitutional provisions of the United States, and of this State, is, whether if the petitioners were citizens of the State of Alabama, seeking to engage in the fire insurance business, upon the same terms and conditions as petitioners, there is any statute or principle of public policy to prohibit them ; and whether there is any statutory regulations for engaging in the business applicable, and if so, what do they require.—Part 1, Ch. 5, title 12, article 2, of the Code of 1886, includes all the statutory provisions regulating fire insurance, material in this connection. The caption to this article is as follows: "Fire, inland and marine insurance companies not incorporated by this State." Trace these provisions back through the Code of 1876 and 1867, and to the legislative enactments from which they were respectively codified, and it is evident they were intended to apply to and govern foreign corporations engaged in fire insurance in this State. The sections of the Code of 1886 originally codified from the act of February 24th, 1860— see acts of 1859-60, p. 113, and the act of March 8th, 1875 (Acts of 1874-5. p. 142)—fairly interpreted require this construction. Section 1200 of the Code· of 1886, with its subdivisions, was taken from the act of 8th of March, 1875, *supra*, and· was enacted originally purely to regulate the business of foreign corporations, doing business in this State. This was our conclusion in the case of *Noble v. Mitchell*, 100 Ala., 519 ; 14 So. Rep., 581 ; 25 L. R. A., 238, and notes. Under this view of the law, and which we think is undoubtedly correct, the

[Hoadley *et al.* v. John Purifoy, as Auditor.]

sections of the Code of 1886 invoked by appellee, can
have no application to the petioners. No such terms or
conditions were imposed upon domestic corporations
chartered by the legislature during the long period that
corporations were chartered by the legislature

On the 28th of February, 1887, the legislature enacted
two separate acts in relation to fire insurance; the first
is on page 85, and the last on page 105 of the acts of
1886–87. These statutes have not been codified. By
the first of these acts, p. 85, it is provided "that all in-
surance companies doing business as such in the State
of Alabama, whether chartered by the State, or admitted
from other states, shall have an actual capital, fully
paid up in cash, of not less than one hundred thousand
dollars, no portion of which shall be represented by
stock notes, or loans on the stock of said company or
companies as collateral." It is further provided in sec-
tion 2, "that all insurance companies doing business
in this State, both foreign and domestic, shall be re-
quired to make annual sworn statements to the auditor,
of their assets, condition, business of the previous year,
in premiums, losses and expenses, in the State, and as a
whole." It will be observed that the act applies
wholly and solely to insurance companies, domestic and
foreign, and construing the two sections together, we
are of opinion that the act applies only to chartered
companies. This conclusion would seem to follow from
the caption, and the body of the act. It says all in-
surance companies "whether chartered by the State, or
admitted from other states." This construction places
the act beyond the objection, that it is discriminating
legislation. If we were to hold that it applied to com-
panies not incorporated, a burden would be placed upon
companies, not imposed upon an individual engaged in
the same business. We do not doubt that an individual
in this State, may engage in and carry on a fire insu-
rance business. There is nothing in such a contract
that is unlawful or against public policy. This proposi-
tion requires neither argument nor authority to support
it. Where then is the constitutional authority for the
legislature to impose a burden upon two or more per-
sons who may prefer to associate together as a partner-
ship or company to engage in the insurance business,
and exempt the individual from such burden ? We are

constrained to the conclusion, that the act cited includes only chartered companies, and has no application to the case made by the petition.

The other act of February 28th, 1887, page 105, reads as follows: "An act to require all, insurance companies not organized under the laws of this State, to pay a uniform license tax of one hundred dollars per annum into the State treasury for the privilege of doing business in this State.

Section 1. *Be it enacted by the General Assembly of Alabama,* That from and after the passage of this act, each and every insurance company not organized under the laws of this State, whether doing business as a fire, marine or inland insurance company, and every life insurance company doing business upon any plan, whether mutual, co-operative assessment or otherwise, and every accident or guarantee company, and every other style or class of insurance company engaged in any business of insurance of any kind whatsoever, shall, before doing any business of insurance in this State, pay into the State treasury the sum of one hundred dollars per annum, for the privilege of carrying on such business in the State of Alabama.

Sec. 2. *Be it further enacted,* That nothing in this act contained shall be construed to apply to any secret or benevolent society, such as Masons, Odd Fellows, Knights of Pythias, Knights of Honor, Iron Hall, or orders of like kind.

Sec. 3. *Be it further enacted,* That all laws or parts of laws in conflict with the provisions of this act, be, and the same are hereby repealed."

It is clear that this act refers only to foreign incorporated insurance companies. Its caption shows that only foreign insurance companies are to be embraced in the act. To apply the body to domestic corporations, would render the act obnoxious to section 2, article 4, of the constitution, which declares that "each law shall contain but one subject, which shall be clearly expressed in its title, etc." To apply the act to companies organized in other states, not incorporated, would impose upon citizens of other states a tax not imposed upon citizens of this State, engaged in the same kind of business, and it exempts individuals altogether. We are of opinion that this act applies only to foreign corpora-

tions, and does not apply to petitioners.   Our conclusion is :   1st.   That there is no statute law in this State, nor principle of public  policy  which  prohibits the citizens of this State, acting as individuals. associations, partnerships or companies from engaging in the business of fire insurance without first being incorporated, and that the citizens of each of the United States are entitled to like "privileges and immunities."

2d.   That the State has the right to adopt all needful rules and regulations which are reasonable to regulate the business of fire insurance in this State.

3d.   That the statutory regulations which are in force in this State, apply to and govern only those companies, or associations which have been incorporated either by the authority of this State, or some foreign State or country.

4th.   That petitoners are citizens of New York, not incorporated, and are entitled to engage in the fire insurance business with the same privileges and immunities as unincorporated citizens of this State.

5th.   That there is no law which requires that they shall be licensed to do business in this State, and that the auditor has no authority to issue such license.

It follows, although from different principles that the city court did not err in refusing to grant the writ of mandamus.

Affirmed.