179 So. 524

## LLOYDS AMERICA v. JULIAN, Superintendent of Insurance.

### 3 Div. 238.

Supreme Court of Alabama.

Jan. 27, 1938.

Rehearing Denied March 17, 1938.

466

Horace C. Wilkinson, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for appellee.

BOULDIN, Justice.

Lloyds America, an unincorporated association organized and qualified under the laws of the state of Texas to write insurance upon the plan known as "Lloyds," made application to the Superintendent of Insurance for a permit and license to engage in the business of writing "Automobile Liability," "Workmen's Compensation," and "General Public Liability" insurance in the state of Alabama.

The application being denied, petition for writ of mandamus was filed in the circuit court.

Respondent's demurrer to the petition being sustained, petitioner declined to plead further, and judgment went for respondent. Petitioner appeals.

The petition avers application for the permit and license were made in strict conformity to the provisions of chapter 306 of the Code of Alabama, section 8319 et seq., and a tender made of all sums required of petitioner for license and permit.

"Upon said application and said tender being made, and an investigation by the Superintendent of Insurance into the condition and affairs of the Petitioner, the Su-

perintendent of Insurance announced and advised your Petitioner that it had complied with all the requirements of the laws of the State of Alabama in reference to engaging in such business in the State of Alabama, save and except one, that is to say."

The petition here sets out sections 8360 and 8355, Code of Alabama, then proceeds:

"And under these sections and related statutes the said Frank N. Julian, as Superintendent of Insurance of the State of Alabama, claims and contends that Petitioner must have a deposit of not less than two hundred thousand dollars with the Treasurer of this State or with the financial officer of some other state of the United States, as is required by said section 8355 of the Code of Alabama, before your petitioner can be licensed to engage in such business in the State of Alabama.

"Petitioner avers that it does not have a deposit of two hundred thousand dollars or more with the Treasurer of Alabama, or with the financial officer of any other state in the United States, although it has a capital of more than $800,000.00 and securities on deposit with the Department of Insurance of the State of Texas, Missouri and New Mexico, aggregating towit, $139,415.-69; and solely because Petitioner does not have the two hundred thousand dollar deposit above referred to, the said Frank N. Julian, as Superintendent of Insurance of the State of Alabama, refused to issue a license and permit to your Petitioner to engage in the aforesaid business in the State of Alabama.

"Petitioner avers that its financial condition is substantially shown by a report of its examination by the Insurance Department of the State of Texas and the Insurance Department of the State of Indiana as of towit, the 12th day of June, 1937, a true copy of which is hereto attached, marked Exhibit "A" and made a part of this petition as if fully set out herein."

Petition prays for a writ of mandamus requiring the Superintendent of Insurance to issue license and permit without the deposit demanded by him.

The issue is thus framed for the purpose of having a construction of section 8360 of the Code, which reads: "Associations of individuals, whether organized within the state or elsewhere, formed upon the plan known as 'Lloyd's'—whereby each associate underwriter becomes liable for a proportionate part of the whole amount insured by policy—may be authorized to transact business of insurance, other than life, in this state, in like manner and upon the same terms and conditions as are required of and imposed upon insurance companies regularly organized; but all such 'Lloyd's' whether organized within this state or elsewhere, not having an actual paid-up cash capital, shall make the same deposit, and upon the same terms and conditions as required by section 8355 (4563) of foreign insurance companies incorporated or associated under the laws of any government or state other than the United States or one of the United States."

This section first appeared in the general revision of our Insurance Laws by the Act of February 18, 1897, carried into the Code of 1896 as chapter 63, art. 1, §§ 2575 to 2613.

In Hoadley et al. v. John Purifoy, as Auditor, 107 Ala. 276, 18 So. 220, 224, 30 L.R.A. 351, a Lloyds association composed of underwriters in New York sought by mandamus to obtain a license to write fire and marine insurance in this state.

The decision is summarized in the following holdings: "(1) That there is no statute law in this state, nor principle of public policy, which prohibits the citizens of this state, acting as individuals, associations, partnerships, or companies, from engaging in the business of fire insurance without first being incorporated, and that the citizens of each of the United States are entitled to like 'privileges and immunities;' (2) that the state 'has the right to adopt all needful rules and regulations which are reasonable' to regulate the business of fire insurance in this state; (3) that the statutory regulations which are in force in this state apply to and govern only those companies or associations which have been incorporated either by authority of this state, or some foreign state or country; (4) that petitioners are citizens of New York, not incorporated, and are entitled to engage in the fire insurance business with the same privileges and immunities as unincorporated citizens of this state; (5) that there is no law which requires that they shall be licensed to do business in this state, and that the auditor has no authority to issue such license."

This decision gave birth to section 8360.

One alternative under this statute is that Lloyds, briefly defined therein, may be admitted to do business in this state upon the same terms and conditions

as are required of insurance companies "regularly organized."

Among the terms and conditions carried into section 8360 by this reference is the following from section 8351: "If an insurance company other than life, it has an actual paid up cash capital of not less than one hundred thousand dollars of which at least fifty thousand dollars shall be invested in state bonds or United States bonds or notes secured by mortgages on real estate for double the amount to be certified as worth at least fifty thousand dollars by the insurance commissioner of the state in which said company is organized, reckoning the same at their current market value; or in lieu of a cash capital stock, such company shall have and maintain a surplus above all liabilities, including reinsurance reserve, of not less than one hundred thousand dollars."

. "Actual paid up cash capital" in this section represents, ordinarily at least, cash capital derived from paid-up subscriptions for capital stock payable in cash, a continuing unimpaired capital as a basis of security for policies issued by such companies; Alabama policyholders standing on equal terms with those of other states.

By the second alternative of section 8360, Lloyds associations, "not having an actual paid-up cash capital" must "make the same deposit" as required by section 8355 of foreign companies, viz., a deposit of securities of the value of $200,000 in exclusive trust for the benefit of policyholders and creditors in the United States.

It is significant that "actual paid-up cash capital" is the identical language employed in both section 8351 and 8360.

██ Lloyds, in the nature of such associations, are not regularly organized corporations, with paid-up capital stock. But the statute does contemplate a setup in which they shall have an "actual paid up cash capital" of like amount and alike available as a continuous and unimpaired security behind policies issued in Alabama.

Exhibited to the petition is a statement of the character required by Code, § 8348, giving the salient features of the underwriters' agreement, with statement of financial condition as of December 31, 1936. This statement furnishes official data on which the Superintendent of Insurance may base his judgment as to whether and on what condition such association shall be admitted to do business under the laws of Alabama.

Among the features of this association going to the presence of a stable unimpaired "actual paid-up cash capital" is the withdrawal privileges of underwriters. The attorney in fact, analogous to a general manager, keeps a complete and separate account with each underwriter, who may at any time after one year revoke the power of attorney, and retire from the association. His subscription to the guaranty fund, whether actually paid in or merely secured by note and collateral, thereafter stands as security only for policies theretofore written.

Subject to this charge, and after such policies have expired and demands accruing thereon are paid, the underwriter may have his account closed and withdraw all his balance, less 10 per cent. of his subscription in force at time of withdrawal. Under such setup it cannot be said that paid-in subscriptions by underwriters become the absolute property of the association, like paid-in capital stock in an ordinary corporation, an asset behind the policies issued so long as in business. Any number of underwriters may thus withdraw; and the company go on issuing policies as before.

The general averment of the petition that the association has a "capital of more than $800,000, when compared with the financial statement where it is broken down and posted up as "Total Admitted Assets" $870,278.39, disclosed this figure represents "Assets" rather than "Capital," and subject to liabilities also listed, leaving a surplus at $131,808.39. Whether all or what part of the securities representing such surplus are pledged to secure policies in other states, and so not available as security for Alabama policies, does not appear.

It should be noted that mortgage loans, $161,296.39, listed as assets and mentioned in appellant's brief, do not represent investments made by the association of its own funds, but notes and mortgages accepted by the Lloyds as subscriptions to underwriters' contracts under the Lloyds plan. Interest does not accrue thereon until demand is made by the attorney in fact.

Without further pursuing the inquiry, we are not convinced that the showing made imposed a clear duty on the Superintendent of Insurance to grant license and permit to do business in Alabama under the first alternative of section 8360, or that he was not in the discharge of legal duty in requiring

:a deposit under the second alternative of said section.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

On Rehearing.

BOULDIN, Justice.

The opinion recognizes and defines with sufficient clarity, we think, the two alternatives under which Lloyds may qualify to do business in Alabama by virtue of section 8360 of the Code.

If, as insisted in brief, the petition for mandamus discloses that the Superintendent of Insurance erroneously construes the statute to mean they may qualify only under the latter alternative, this would not warrant a mandamus, unless the showing made to him as required by law entitled the applicant to a license to do business in Alabama. That showing was made a part of the petition.

For reasons sufficiently stated in the opinion, such showing did not entitle the applicant to a license. Obviously, this court cannot take judicial notice of the statutory laws of the state of Texas, nor of further data presented in brief.

Suffice to say the record does not disclose an actual paid-up cash capital, nor a maintained surplus, as required by section 8351, as defined in the opinion.

The withdrawal rights of underwriters as disclosed by the record are correctly shown in the opinion. For reasons there given, there is not shown a cash capital or maintained surplus of $100,000.00 standing as a guaranty fund behind policies issued so long as the Lloyds continues in business. What disposition is to be made of any surplus as between underwriters after the association has gone out of business and all policy obligations have been met would, as of course, be no concern of policy-holders.

In no event could a license issue in 1938 on any showing of financial condition as of December 31, 1936. We dealt with the case on the merits that all concerned should have a construction of the statutes.

Application overruled.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.